PRESENT:  All the Justices

JAMES M. DUNLAP

v.  Record No. 131318

OPINION BY
CHIEF JUSTICE CYNTHIA D. KINSER
FEBRUARY 27, 2014

COTTMAN TRANSMISSION SYSTEMS,
     LLC, ET AL.

UPON QUESTIONS OF LAW
CERTIFIED BY THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

The United States Court of Appeals for the Fourth Circuit

(the Fourth Circuit) entered an order of certification

requesting this Court to exercise jurisdiction pursuant to

Article VI, Section 1 of the Constitution of Virginia and Rule

5:40, and to answer the following questions of law:

1.   May a plaintiff use tortious interference
     with contract or tortious interference with
     business expectancy as the predicate
     unlawful act for a claim under the Virginia
     business conspiracy statute, Va. Code
     §§ 18.2-499, 18.2-500?

2.   Does a [I] two-year or [II] five-year
     statute of limitations apply to claims of
     tortious interference with contract and
     tortious interference with business
     expectancy under Va. Code § 8.01-243?

(Roman numeral designators added).

With regard to the first question, we hold that causes of

action for tortious inference with contract and tortious

interference with business expectancy qualify as the requisite

unlawful act to proceed on a business conspiracy claim under

Code §§ 18.2-499 and -500 because both claims are predicated on

an independent common law duty arising outside of contract. As to the second question, we hold that the five-year statute of limitations in Code § 8.01-243(B) applies because both tortious interference claims involve injury to property rights.

## I. RELEVANT FACTS AND PROCEEDINGS[1]

James Dunlap brought an action against Cottman Transmission Systems, LLC, and Todd P. Leff (collectively, Cottman), alleging claims for tortious interference with contract, tortious interference with business expectancy, and business conspiracy in violation of Code §§ 18.2-499 and -500.[2] The claims arose from franchise agreements between Dunlap and AAMCO Transmissions, Inc., under which Dunlap had operated two AAMCO transmission and repair facilities for more than 30 years. In 2006, a company that already owned a controlling interest in Cottman Transmission Systems, LLC, a competitor of AAMCO, acquired a controlling interest in AAMCO. According to Dunlap, the new owner sought to convert all Cottman Transmission franchises into AAMCO franchises. That decision resulted in

---

[1] The pertinent facts are undisputed and are taken primarily from the certification order in Dunlap v. Cottman Transmission Systems, LLC, No. 11-2327 (4th Cir. Aug. 21, 2013).

[2] Dunlap filed the action in the Circuit Court for the City of Chesapeake, but Cottman subsequently removed it to the United States District Court for the Eastern District of Virginia, Norfolk Division (the District Court), under 28 U.S.C. §§ 1332 and 1441(a).

some existing AAMCO franchises being closed, including those owned by Dunlap. He alleged that the closing of his AAMCO transmission and repair facilities was brought about by a conspiracy between Cottman and others who stood to benefit from his franchises' closure.

The District Court dismissed the business conspiracy claim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to allege an unlawful act or an unlawful purpose as required to establish such a claim. Dunlap v. Cottman Transmission Sys. LLC, No. 2:11cv272, slip op. at 1 (E.D. Va. Nov. 7, 2011). It concluded that "[a]ll of the duties involved in this case [arose] out of and the damages flow[ed] from contractual obligations" between Dunlap and AAMCO and that to allow "allegations of . . . contractual interference . . . to serve as the requisite unlawful act for purposes of the business conspiracy statute would turn what should be contractual claims into a tort." Id. at 3-4 (citing Station #2, LLC v. Lynch, 280 Va. 166, 695 S.E.2d 537 (2010)).

The District Court dismissed Dunlap's remaining two tort claims as barred by the two-year statute of limitations in Code § 8.01-248. Id. at 5. The District Court concluded that our decision in Station #2 abrogated the Court's prior ruling in Worrie v. Boze, 198 Va. 533, 95 S.E.2d 192 (1956), and thus rejected Dunlap's contention that his tortious interference

3

claims constituted an injury to his property, which would be subject to a five-year statute of limitations under Code § 8.01-243(B).  Id. at 4-5.  The District Court viewed Dunlap's claimed damages as "disappointed economic expectations" and held that such do not constitute an injury to property.  Id. at 5 (citing Willard v. Moneta Building Supply, 262 Va. 473, 551 S.E.2d 596 (2001)).

Dunlap appealed to the Fourth Circuit.  In its certification order, the Fourth Circuit stated: "the two questions together determine the outcome of this case."  Rule 5:40 requires that a certified question be "determinative" in "any proceeding pending before the certifying court."  We agree that the questions are determinative.  The viability of the business conspiracy claim turns on whether the tortious interference claims qualify as the requisite unlawful act.  The tortious interference claims are time-barred if subject to a two-year statute of limitations.  Accordingly, we accepted the certified questions of law by order entered September 10, 2013.

## II.  ANALYSIS

We will address each certified question separately.

### A. Question #1

The first certified question asks whether tortious interference with contract and tortious interference with business expectancy qualify as an unlawful act for purposes of a

4

claim under the business conspiracy statutes, Code §§ 18.2-499 and -500.  The common law has long recognized actions based on a conspiracy resulting in business-related damages.  For instance, in Crump v. Commonwealth, 84 Va. 927, 6 S.E. 620 (1888), we stated that "[a] conspiracy or combination to injure a person in his trade or occupation is indictable."  Id. at 934, 6 S.E. at 624; see also Harris v. Commonwealth, 113 Va. 746, 749, 73 S.E. 561, 562 (1912) (stating that "a conspiracy must be a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful, by criminal or unlawful means"); Reg. v. Druitt, 10 Cox C.C. 592 (1867) ("The public had an interest in the way in which a person disposes of his industry and his capital; and if two or more persons conspired, by threats, intimidation, or molestation to deter or influence him in the way he should employ his industry, his talents, or his capital, they would be guilty of a criminal offence.  This was the common law of the land.").

Years later, in Werth v. Fire Companies' Adjustment Bureau, 160 Va. 845, 171 S.E. 255 (1933), we explained that

> [a] conspiracy consists of an unlawful
> combination of two or more persons to do
> that which is contrary to law, or to do that
> which is wrongful and harmful towards
> another person [and] may be punished
> criminally by indictment, or civilly by an
> action on the case in the nature of

5

conspiracy if damage has been occasioned to the person against whom it is directed. It may also consist of an unlawful combination to carry out an object not in itself unlawful by unlawful means.

Id. at 854, 171 S.E. at 258 (internal quotation marks omitted).

We further elaborated in Gallop v. Sharp, 179 Va. 335, 19 S.E.2d 84 (1942), that

[t]he gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use unlawful means. In other words, the basis of the action is the wrong which is done under the conspiracy and which results in damage to the plaintiff. No cause of action exists without the resulting injury, and the damage produced must arise as the effective result of the conspiracy.

Id. at 338, 19 S.E.2d at 86; accord CaterCorp, Inc. v. Catering Concepts, Inc., 246 Va. 22, 28, 431 S.E.2d 277, 281-82 (1993).

In 1964, the General Assembly enacted the predecessors of Code §§ 18.2-499 and -500, the statutes at issue in the first certified question.[3] 1964 Acts ch. 623. The provisions of Code § 18.2-500 provide civil relief, including treble damages, for persons "injured in his reputation, trade, business or

---

[3] The conspiracy statute was originally codified in 1962 as part of the Commonwealth's antitrust laws. See Former Code § 59.21.1 (Cum. Supp. 1962) (superseded). The General Assembly moved the statute to the criminal code with much greater sanctions in 1964. See Former Code § 18.1-74.1:1 (Cum. Supp. 1975)(superseded), as enacted by 1964 Acts ch. 623); see also Andrews v. Ring, 266 Va. 311, 319, 585 S.E.2d. 780, 784 (2003).

6

profession by reason of a violation of § 18.2-499."  In turn,

Code § 18.2-499 imposes criminal liability on

> [a]ny two or more persons who combine,
> associate, agree, mutually undertake or
> concert together for the purpose of (i)
> willfully and maliciously injuring another
> in his reputation, trade, business or
> profession by any means whatever or (ii)
> willfully and maliciously compelling another
> to do or perform any act against his will,
> or preventing or hindering another from
> doing or performing any lawful act.

To recover in an action under these statutes, a plaintiff must establish: "(1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business[;] and (2) resulting damage to plaintiff."  Allen Realty Corp. v. Holbert, 227 Va. 441, 449, 318 S.E.2d 592, 596 (1984); accord CaterCorp, 246 Va. at 28, 431 S.E.2d at 282.  It is not necessary for a plaintiff to prove that the defendant conspirators acted with actual malice, i.e., ill-will, hatred, or spite directed toward the plaintiff.  Commercial Bus. Sys., Inc. v. BellSouth Servs., 249 Va. 39, 47, 453 S.E.2d 261, 266-67 (1995).  Rather, a plaintiff must establish by clear and convincing evidence only that the conspirators acted with legal malice, i.e., "intentionally, purposely, and without lawful justification."  Id. at 47, 453 S.E.2d at 267; accord Northern Va. Real Estate v. Martins, 283 Va. 86, 110, 720 S.E.2d 121, 133 (2012); Williams v. Dominion Tech. Partners, L.L.C., 265 Va.

280, 290, 576 S.E.2d 752, 757 (2003); Simmons v. Miller, 261 Va. 561, 578, 544 S.E.2d 666, 677 (2001).

Because there can be no conspiracy to do an act that the law allows, Werth, 160 Va. at 855, 171 S.E. at 259, we have held that "an allegation of conspiracy, whether criminal or civil, must at least allege an unlawful act or an unlawful purpose" to survive demurrer.  Hechler Chevrolet, Inc. v. General Motors Corp., 230 Va. 396, 402, 337 S.E.2d 744, 748 (1985).[4]  In other words, actions for common law civil conspiracy and statutory business conspiracy lie only if a plaintiff sustains damages as a result of an act that is itself wrongful or tortious.  See Beck v. Prupis, 529 U.S. 494, 501 (2000); see also Almy v. Grisham, 273 Va. 68, 80, 639 S.E.2d 182, 188 (2007) ("[I]n Virginia, a common law claim of civil conspiracy generally requires proof that the underlying tort was committed."); Werth, 160 Va. at 855, 171 S.E. at 259 ("'To give action there must not only be conspiracy, but conspiracy to do a wrongful act.'") (quoting Transportation Co. v. Standard Oil Co., 40 S.E. 591,  594 (W.Va. 1902)); McCarthy v. Kleindienst, 741 F.2d 1406, 1413 n.7 (D.C. Cir. 1984) ("[C]onspiracy allegations . . . do not set forth an independent cause of

---

[4] The term "unlawful act" is defined as "[c]onduct that is not authorized by law; a violation of a civil or criminal law." Black's Law Dictionary 1678 (9th ed. 2009).

8

action; instead, such allegations are sustainable only after an underlying tort claim has been established."); Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983) ("Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort."); Koster v. P&P Enters., 539 N.W.2d 274, 278 (Neb. 1995) ("[A] claim of civil conspiracy is not actionable in itself, but serves to impose vicarious liability for the underlying tort of those who are a party to the conspiracy."); Selle v. Tozser, 786 N.W.2d 748, 756 (S.D. 2010) ("[C]ivil conspiracy is merely a method of establishing joint liability for the underlying tort.").

To determine whether tortious interference with contract and tortious interference with business expectancy qualify as the requisite "unlawful act" for purposes of the business conspiracy statutes, we must examine the nature of those causes of action. We recognized a cause of action for tortious interference with contract rights in Chaves v. Johnson, 230 Va. 112, 335 S.E.2d 97 (1985). The necessary elements to establish a prima facie case are: "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or

termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted."  Id. at 120, 335 S.E.2d at 102; accord Dunn, McCormack & MacPherson v. Connolly, 281 Va. 553, 558-59, 708 S.E.2d 867, 870 (2011).  However, if a contract is terminable at will or involves only a contract or business expectancy, "'a plaintiff, in order to present a prima facie case of tortious interference, must allege and prove not only an intentional interference . . . , but also that the defendant employed "improper methods."'"[5]  Dunn, McCormack & McPherson, 281 Va. at 559, 708 S.E.2d at 870 (quoting Duggin v. Adams, 234 Va. 221, 226-27, 360 S.E.2d 832, 836 (1987)); see also Preferred Sys. Solutions, Inc. v. GP Consulting, LLC, 284 Va. 382, 403-04, 732 S.E.2d 676, 688 (2012); Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co., 254 Va. 408, 414-15, 493 S.E.2d 375, 378-79 (1997).

---

[5] "Methods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules."  Duggin v. Adams, 234 Va. 221, 227, 360 S.E.2d 832, 836 (1987).  Improper methods may include "violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship." Dunn, McCormack & MacPherson, 281 Va. at 559, 708 S.E.2d at 870 (internal quotation marks omitted).  We have also stated that methods may be improper if "they violate an established standard of a trade or profession, or involve unethical conduct[, s]harp dealing, overreaching, or unfair competition."  Id. (internal quotation marks omitted).

10

The tortious interference cause of action is historically rooted in the principle that "the common law right of contract necessarily brought with it, as a corollary, a right to seek recompense against those who interfered with a valid contract." Wyatt v. McDermott, 283 Va. 685, 693, 725 S.E.2d 555, 558 (2012); see Restatement (Second) of Torts § 766, cmt. v (1979) (stating that a plaintiff who has an action for breach of contract against a third person is not precluded "from maintaining an action . . . against the person who has induced or otherwise caused the breach"). Indeed, Cottman acknowledges that "there is a common law duty to refrain from interfering with contractual rights." Relying on this Court's decision in Station #2, Cottman, however, asserts that a tortious interference claim cannot form the requisite unlawful act because it "necessarily depends on, and is not independent of, contract obligations."

In Station #2, we addressed whether a conspiracy merely to breach a contract qualifies as the required unlawful act for a claim under Code §§ 18.2-499 and -500. 280 Va. at 173-74, 695 S.E.2d at 541. There, the plaintiff alleged that the defendants conspired to breach their agreement to allow the plaintiff to install soundproofing material in the void space above the ceiling of its restaurant. Id. at 171, 695 S.E.2d at 539-40.

11

The unlawful act, according to the plaintiff, was the breach of that agreement.

On appeal, we affirmed the trial court's judgment sustaining a demurrer to the statutory business conspiracy claim.  Id. at 176, 695 S.E.2d at 543.  We concluded that a "conspiracy merely to breach a contract that does not involve an independent duty arising outside the contract is insufficient to establish a civil claim under § 18.2-500." Id. at 174, 695 S.E.2d at 541 (emphasis added); see also Richmond Metro. Auth. v. McDevitt Street Bovis, Inc., 256 Va. 553, 559, 507 S.E.2d 344, 347 (1998) ("A tort action cannot be based solely on a negligent breach of contract."); Dunn Constr. Co. v. Cloney, 278 Va. 260, 267, 682 S.E.2d 943, 946-47 (2009) ("[T]he determination whether a cause of action sounds in contract or tort depends on the source of the duty violated.").  We explained that mere non-performance of a contract cannot "rise to the level of an 'unlawful act' under Code § 18.2-500 [because] the duty of performance under the contract springs solely from the agreement; the duty is not imposed extrinsically by statute, whether criminal or civil, or independently by common law."  Station #2, 280 Va. at 174, 695 S.E.2d at 541.  We therefore concluded that the non-performance of a contract could not, without more, qualify as an "unlawful act."  Id. at 174, 695 S.E.2d at 541.

In reaching this conclusion, we emphasized that the plaintiff's agreement with the defendants did not "implicate [any] statutory or independent common law duties" and thus a conspiracy merely to breach that agreement was insufficient to state a claim under the business conspiracy statutes. Id. at 175, 695 S.E.2d at 542. However, the following cases involving statutory business conspiracy claims, we explained, were distinguishable from Station #2 because they, unlike Station #2, did involve conduct violating independent common law duties: Commercial Bus. Sys., 249 Va. at 41, 453 S.E.2d at 263 (a defendant's employee awarded a contract to the plaintiff's employer as a result of a bribe); Advanced Marine Enters. v. PRC, 256 Va. 106, 112, 501 S.E.2d 148, 151 (1998) (a defendant hired the plaintiff's employees although they were subject to a non-compete agreement); CaterCorp, 246 Va. at 26-27, 431 S.E.2d at 280-81 (a defendant conspired with a plaintiff's employee to breach his common law duty of loyalty); Simmons, 261 Va. at 577-78, 544 S.E.2d at 676-77 (plaintiff alleged breach of fiduciary duties); and Feddeman & Co. v. Langan Assocs., P.C., 260 Va. 35, 46, 530 S.E.2d 668, 675 (2000) (same). Moreover, in Station #2, the plaintiff did not allege claims for tortious interference with contract and/or tortious interference with business expectancy so we had no occasion to address the issue raised in the first certified question.

13

As we discussed in Station #2, the only duties at issue in a breach of contract claim are those arising solely from the contract itself; therefore, a breach of contract "does not, without more, create a basis for recovery in tort." 280 Va. at 174, 695 S.E.2d at 541.  In contrast, both tortious interference with contract and tortious interference with business expectancy are intentional torts predicated on the common law duty to refrain from interfering with another's contractual and business relationships.  That duty does not arise from the contract itself but is, instead, a common law corollary of the contract.  See Wyatt, 283 Va. at 693, 725 S.E.2d at 558.  The duty arises outside the contract even though the intentional interference must induce or cause a breach or termination of the contractual relationship or business expectancy.  See Dunn, McCormack & McPherson, 281 Va. at 558, 708 S.E.2d at 870.

Accordingly, we hold that tortious interference with contract and tortious interference with business expectancy each constitute the requisite "unlawful act" to proceed on a business conspiracy claim under Code §§ 18.2-499 and -500.  See Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co., 527 F.Supp.2d 1355, 1370 (M.D. Fla. 2007) ("Tortious interference with a business relationship can constitute an unlawful act for the purposes of pleading a claim for civil conspiracy."); Advanced Power Sys. v. Hi-Tech Sys., 801 F.Supp. 1450, 1458 (E.D. Pa. 1992) ("To

14

establish an underlying unlawful act . . . , plaintiff must prove that the parties came together for the express purpose of committing either a criminal act or an intentional tort."); John's Insulation, Inc. v. Siska Constr. Co., 774 F.Supp. 156, 161 (S.D.N.Y. 1991) (noting that a plaintiff must plead "specific wrongful acts which constitute an independent tort" to establish the predicate unlawful act in a civil conspiracy claim); American Diversified Ins. Servs. v. Union Fidelity Life Ins. Co., 439 So. 2d 904, 906 (Fla. Dist. Ct. App. 1983) ("[A]ppellant has stated a cause of action for civil conspiracy based on an independent tort, specifically the tort of intentional interference with business relationships."); Avery v. Rossford Ohio Transp. Dist., 762 N.E.2d 388, 395 (Ohio Ct. App. 2001) ("[T]he underlying unlawful act must be a tort.").

## B. Question #2

The second question asks whether a two-year or five-year statute of limitations applies to claims of tortious interference with contract and tortious interference with business expectancy. Under Code § 8.01-243(A), an action for personal injuries is subject to a two-year statute of limitations, while under Code § 8.01-243(B) an action for injury to property is subject to a five-year statute of limitations. The dispositive issue is whether tortious interference with

15

contract and tortious interference with business expectancy allege injury to property.  See Willard, 262 Va. at 482, 551 S.E.2d at 600 (holding that the "applicable statute of limitations is determined by the type of injury alleged").  If so, they must be brought within five years after the cause of action accrues.  Code § 8.01-243(B).  If not, the two-year statute of limitations in either Code § 8.01-243(A) or -248 applies.[6]

We have held that "the right to performance of a contract and the right to reap profits therefrom are property rights which are entitled to protection in the courts."  Worrie, 198 Va. at 536, 95 S.E.2d at 196 (emphasis added); accord Chaves, 230 Va. at 120, 335 S.E.2d at 102; see also Downey v. United Weatherproofing, Inc., 253 S.W.2d 976, 980 (Mo. 1953) ("The right to perform a contract and to reap the profits therefrom, and the right to performance by the other party, are property rights entitling each party to the fulfillment of the contract by performance."); Raymond v. Yarrington, 73 S.W. 800, 803 (Tex.

_____

[6] The second certified question asks only about the two-year and five-year statutes of limitations in Code § 8.01-243. Cottman, however, argues that the applicable statute of limitations is the catchall two-year provision in Code § 8.01-248.  As the statute's plain language indicates, it applies only to "[e]very personal action . . . for which no limitation is otherwise prescribed."  In determining whether Code § 8.01-248 applies, we analyze the nature of the cause of action at issue. Parker-Smith v. Sto Corp., 262 Va. 432, 439, 551 S.E.2d 615, 619 (2001).

1903) ("It seems to us that where a party has entered into a contract with another to do or not to do a particular act or acts, he has as clear a right to its performance as he has to his property, either real or personal; and that knowingly to induce the other party to violate it is as distinct a wrong as it is to injure or destroy his property."); cf. Andrews v. Ring, 266 Va. 311, 319, 585 S.E.2d 780, 784 (2003) (holding that Code §§ 8.01-499 and -500 "apply to business and property interests, not to personal or employment interests").

As Cottman notes, determination of the applicable statute of limitations in Worrie depended on whether the alleged cause of action for conspiracy to breach a contract was of the nature to survive the death of the plaintiff. 198 Va. at 536, 95 S.E.2d at 195. At that time, actions that survived and thus subject to a longer statute of limitations were those for "'wrong to property, real or personal, or which [grew] out of breach of contract.'" Id. at 536, 95 S.E.2d at 195 (quoting Winston v. Gordon, 115 Va. 899, 915-16, 80 S.E. 756, 763 (1914)). Because of statutory enactments in 1977, survivability is no longer germane in deciding which statute of limitations applies. Willard, 262 Va. at 479, 551 S.E.2d at 598; Pigott v. Moran, 231 Va. 76, 80, 341 S.E.2d 179, 181 (1986). Nevertheless, the Court's analysis in Worrie to

17

determine whether an alleged injury is to property or to the person remains relevant and binding.[7]

That analysis centered on the plaintiffs' claim that "their business or estate, their property" in an employment contract with a dancing instructor was destroyed by the defendants' conspiracy to induce breach of the employment contract and to solicit the plaintiffs' customers, depriving the plaintiffs of business. Worrie, 198 Va. at 536-37, 95 S.E.2d at 196. We concluded that based on those allegations, "the wrong done and damage done [was] directed to the estate or property of the plaintiffs and not to them personally." Id. at 537, 95 S.E.2d at 196; compare Willard, 262 Va. at 481, 551 S.E.2d at 599 (holding that a shareholder's rights to dissent to corporate action "are property interests and that allegations of loss of dissenters' rights constitute an allegation of 'injury to property' within the meaning of Code § 8.01-243(B)"), and Lavery v. Automation Mgmt. Consultants, Inc., 234 Va. 145, 154, 360 S.E.2d 336, 341-42 (1987) (holding that an action seeking damages for the unauthorized use of a person's name, portrait, or picture was a claim for injury to property), with Pigott, 231 Va. at 81, 341 S.E.2d at 182 (holding that alleged fraud by a realtor was directed at the plaintiffs personally and not to

---

[7] Likewise, that portion of the decision in Worrie is not affected by the Court's subsequent decision in Station #2.

their property because the fraud had no impact on the real property, which remained in the same condition and was available for the same use both before and after the alleged fraud was perpetrated).

As already discussed, one of the elements of a claim for tortious interference with either a contract or business expectancy requires intentional interference inducing or causing a breach or termination of the contractual relationship or business expectancy.  Chaves, 230 Va. at 120, 335 S.E.2d at 102. Such interference is directed at and injures a property right, i.e., the right to performance of a contract and to reap profits and benefits not only from the contract but also from expected future contracts or otherwise advantageous business relationships.  See Worrie, 198 Va. at 536, 95 S.E.2d at 196; see also Pure Milk Ass'n v. Kraft Foods Co., 130 N.E.2d 765, 772 (Ill. App. Ct. 1955) ("'[T]he right to perform a contract and to reap the profits resulting from such performance . . . are property rights which entitle each party to protection, and to seek compensation by action in tort for any injuries to such contract.'"); Johnson v. Gustafson, 277 N.W. 252, 254 (Minn. 1938) ("[T]he interest in a contract being a property right, a party thereto has a right of action against persons who are by their conduct substantially interfering with the performance thereof."); Barr v. Essex Trade Council, 30 A.

881, 885 (N.J. Ch. 1894) ("A man's business is [his] property."); <u>Carolina Overall Corp. v. East Linen Supply, Inc.</u>, 174 S.E.2d 659, 661 (N.C. Ct. App. 1970) ("The theory of the doctrine which permits recovery for the tortious interference with a contract is that the right to the performance of a contract and to reap the profits therefrom are property rights which entitle each party to protection and to seek compensation by action in court for an injury to such contract."). Contrary to Cottman's argument, tortious interference is not an allegation of nothing more than disappointed economic expectations, which are redressed by the law of contracts. <u>See</u> <u>Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.</u>, 236 Va. 419, 425, 374 S.E.2d 55, 58 (1988).

Therefore, we hold that the five-year statute of limitations in Code § 8.01-243(B) applies to both tortious interference with contract and tortious interference with business expectancy.

III. CONCLUSION

In summary, we hold that both tortious interference with contract and tortious interference with business expectancy qualify as an unlawful act for purposes of a business conspiracy claim under Code §§ 18.2-499 and -500. We also hold that the five-year statute of limitations in Code § 8.01-243(B) applies

20

to causes of action for tortious interference with contract and tortious interference with business expectancy.

Certified question 1 answered in the affirmative.

Certified question 2, alternative II answered in the affirmative.

21